THE MARIA LUIGIA.[1]

*(District Court, E. D. New York.  November 9, 1883.)*

BREACH OF CHARTER — DEVIATION — DAMAGE TO CARGO — ENTRY IN LOG — EVIDENCE.

Where the charter of a vessel which brought a cargo of green fruit from Messina to New York contained the clause that, "being essentially necessary for the good preservation of the cargo, it is especially agreed that the vessel, on leaving Gibraltar, shall go to the northward of the Western islands, and keep north of that latitude unless absolutely forced south by stress of weather, in which case the vessel's log-book shall furnish evidence of that fact;" and it appeared in evidence that the vessel, after passing Gibraltar, kept the port tack on a course which would have taken her north of the Western islands, but afterwards changed her course to the starboard tack, and the entry in the log, made at the time, was, "on account of high sea have taken starboard tack," and she passed to the southward of the islands, and an action was brought against her for damages for breach of charter-party: *held,* that, as the vessel was close-hauled on both tacks, and the wind and sea continued the same, and therefore changing the tack brought no relief from the high sea, the entry in the log stated a motive other than the real one for the change of course, and showed no reason for changing the course; that even if the existence of a current setting the vessel to the eastward be conceded, it could not be concluded that such current compelled the change of course, because the only reason stated in the log for the change of course was the high sea; that as it had not been proved that the master was forced by stress of weather to deviate from the voyage which he had contracted to make, the vessel was liable for any damage to the cargo that was caused by the unjustified deviation.

In Admiralty

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

*Lorenzo Ullo*, for libelant.

*Jas. K. Hill, Wing & Shoudy*, (*Robert D. Benedict*, of counsel,) for claimant.

BENEDICT, J. This action is founded upon a charter-party wherein the master of the Italian bark Maria Luigia agreed to transport in that vessel a cargo of green fruit from the port of Messina to the port of New York. Among other covenants the charter-party contains the following:

"Being essentially necessary for the good preservation of the cargo, it is especially agreed that the vessel, on leaving Gibraltar, shall go to the northward of the Western islands, and keep north of that latitude unless absolutely forced south by stress of weather, in which case the vessel's log-book shall furnish evidence of that fact."

The breach assigned is that the vessel willfully, and without being forced by stress of weather, did not keep north of the latitude of the Western islands, but took the southern passage. The damage claimed is injury to the fruit to the extent of $30,000.

The case, as I view the testimony, turns upon the question whether the course pursued by the vessel on April 18th, when she abandoned a course to the northward and took up a course to the southward, was forced upon the master by stress of weather. To the navigation on that day, therefore, attention is directed. It appears in evidence that the vessel, after passing Gibraltar on April 15th, worked to the northward on the port tack until the eighteenth of April. That day found the vessel proceeding upon a course which, if continued, would have carried her northward of the Western islands. On that day her course was altered, and she bore to the southward on the starboard tack, and thereafter, with no important exception, continued her way to New York upon the southern course, passing to the southward of the Western islands instead of to the northward of them. The log for that day shows that during the first twelve hours of the day the wind was fresh from the third quadrant, the sea high, and the vessel under topsail, foresail, mizzen staysail, and jib. At midnight the entry is, "squally weather, light wind, and the vessel sailing under reefed topsail and foresail, and working heavy on account of high seas." At 5 A. M. the entry is, "on account of high sea have taken the starboard tack." The last entry of the day is, "up to midnight less wind." At the time of the change from a northward to a southward course, thus described, as also appears by the log, the vessel was to the southward and westward of Cape St. Vincent, some 22 miles to the westward of the cape, and distant therefrom some 45 miles.

It is my opinion that when, as thus described, the master abandoned the port tack, he abandoned the northerly passage for a southerly one, and the question, therefore, is whether, under the provision of the charter above quoted, the facts thus stated in the log-book prove that the master was forced by stress of weather to abandon the

northern passage, as he did on that day. Upon this question my opinion is adverse to the claimants, and for this reason: the log-book, it will be observed, states the reason for changing from the port to the starboard tack—that is, from the northward to the southward course—to be this, namely, to relieve the vessel from the labor she was subjected to in the high sea running, and no other reason is alluded to. But the vessel was close-hauled on both the tacks, and the wind and sea continued the same. The vessel would therefore labor as much on the starboard as on the port tack. Changing the tack as she did could not bring relief from the labor. The log, therefore, states a motive other than the real motive for this change of course. This circumstance gives ground to infer that the real motive would not bear disclosure, and permits the surmise that the motive thus concealed was similar to the motive alluded to by Judge LOWELL in deciding a case not unlike the present in some features, namely, to "take the easy and comfortable passage where the trade-winds prevail." *The John H. Pearson,* 14 FED. REP. 749.

But the claimants contend further that the case is not to be confined to the fact stated in the log, and that, in addition to the wind and sea described in the log-book, a current setting to the eastward must be taken into the account; and that the wind and sea, as stated in the log, together with an easterly current, forced the master to abandon the northern passage in order to escape the peril of being carried by the wind, sea, and current in dangerous proximity to Cape St. Vincent.

If the existence of a prevailing easterly current in the locality where the ship was when she tacked on April 18th, as well as where she would have been had she not tacked, be considered as proven, still I am not able to conclude that the effect of such current, acting with the wind and sea described in the log, would have been to put the vessel in peril if she had continued the port tack. When the vessel tacked she was 45 miles to the south and west of Cape St. Vincent, and although compelled by his charter to justify his change of course by his log, the master in the log makes no allusion to any current, and nowhere suggests that the current was what forced him to tack, or intimates the existence of any danger from Cape St. Vincent if the northern course be continued. On the contrary, the log gives a different reason for the change, namely, the necessity of relieving the vessel from labor in the high sea. Now, indeed, the master says danger of being carried too near Cape St. Vincent by the current compelled him to abandon his tack on April 18th, but the omission to mention the existence of such a danger in the log warrants the inference that the idea that it was dangerous to continue the port tack because of an easterly current is an after-thought, and without foundation in fact.

My conclusion, therefore, is that neither the facts stated in the log-book nor those facts coupled with the fact that an easterly current

prevails at the locality where the ship abandoned the northern for the southern passage, prove that the master was forced by stress of weather to deviate from the voyage which he had contracted to make. It follows that the ship is responsible for any damage to the cargo that was caused by the unjustified deviation.

The decree must be for the libelant, with an order of reference to ascertain the amount of the damages aforesaid.